# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| **MARTREESE SMITH,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| v. | )   NO. 2:20-cv-00003 |
| | ) |
| **ADEBCO, INC., et al.,** | ) |
| | ) |
|    **Defendants.** | ) |

## MEMORANDUM OPINION

Martreese Smith previously worked as a truck driver for ADEBCO, Inc. He is suing ADEBCO and its president ("Defendants") for unpaid overtime wages and retaliation under the Fair Labor Standards Act ("FLSA"). Defendants filed a Motion for Judgment on the Pleadings. (Doc. No. 63). They argue that the Motor Carrier Act ("MCA") exemption bars Mr. Smith's overtime wages claim, and that Mr. Smith failed to state a prima facie retaliation claim.

The Court finds Mr. Smith's request for overtime wages survives the MCA exemption. That exemption only applies to employees who operate in interstate commerce. According to the amended complaint ("Complaint" or "Compl.") (Doc. No. 62), Mr. Smith never operated in interstate commerce while employed by Defendants.

The Court also finds the Complaint states a prima facie retaliation claim. It alleges Defendants responded to Mr. Smith's overtime wages lawsuit by countersuing him for negligence in connection with a trucking accident. That raises an inference of retaliation where, as here, Defendants did not sue a similarly situated employee who negligently caused a trucking accident.

The Court will deny Defendants' motion for judgment on the pleadings, and will deny as moot Defendants' request to stay discovery pending resolution of that motion. (Doc. No. 68).

## I.  BACKGROUND[1]

### A.  Mr. Smith's Employment

ADEBCO is a general contractor based in Tennessee. (Compl. ¶¶ 2, 7). It supplies and transports material for civil construction projects. (Id.). Debra Young is ADEBCO's president and sole shareholder. (Id. ¶ 3).

Mr. Smith drove trucks for ADEBCO as an "hourly employee" in Tennessee. (Id. ¶¶ 17, 55). In a typical day of work, Mr. Smith would arrive at ADEBCO's lot in Nashville around 6:30 or 7:00 a.m. (Id. ¶¶ 17–18). There, he would perform a pre-shift checklist to ensure his truck was safe to drive. (Id. ¶ 19). Next, he would drive to a nearby I-440 worksite, which is where he would first clock in around 7:30 or 7:45 a.m. (Id. ¶¶ 20–21). After that, he would wait for his truck to be filled with construction material (rocks and dirt), and then he would drive to the Vulcan Danley Quarry in Antioch, Tennessee. (Id. ¶ 20). At the quarry, Mr. Smith would unload the construction materials and then return to the I-440 worksite to refill his truck. (Id.).

Mr. Smith usually drove back and forth between the I-440 worksite and the quarry until around 4:30 or 5:00 p.m. (Id.). At that point, he would clock out at the I-440 worksite, and then make a final trip to the quarry. (Id.). Then, he would return his truck to the ADEBCO parking lot, where he would perform a post-shift checkout procedure. (Id.). Mr. Smith often worked until 6:00 or 6:30 p.m., even though he clocked out much earlier. (Id. ¶ 22).

Mr. Smith "regularly worked 6–7 days per week during his employment" with ADEBCO. (Id. ¶ 25). He alleges he "worked in excess of 40 hours in some workweeks and received some overtime pay," but "was not paid the overtime rate for all hours worked over 40." (Id. ¶ 26). Mr.

---

[1] The background information and facts outlined in this Memorandum Opinion are drawn only from the Complaint and are accepted as true, as required, for the purposes of the Court's decision. See Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 389 (6th Cir. 2007).

Smith worked for ADEBCO "until he was injured on the job" at the quarry when "the ground beneath his truck collapsed, causing his truck to tip over." (Id. ¶¶ 32–33).

### B. Procedural History

Mr. Smith sued Defendants on January 16, 2020, seeking unpaid overtime wages under the FLSA. (Doc. No. 1 ¶¶ 15–17). Defendants filed an answer and counterclaim on May 25, 2020. (Doc. No. 20). The counterclaim accuses Mr. Smith of negligence in connection with his truck accident, and seeks $200,000 in restitution. (Id. at 12–13). Mr. Smith later amended his complaint to include an FLSA retaliation claim premised on Defendants' counterclaim. (Doc. Nos. 28, 62). Defendants filed their Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) on March 2, 2021. (Doc. No. 63).

## II. LEGAL STANDARD

The standard of review for a Rule 12(c) motion for judgment on the pleadings "is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Roger Miller Music, 477 F.3d at 389. When evaluating a Rule 12(c) motion, courts "construe the complaint in the light most favorable to the plaintiff," and "accept all of the complaint's factual allegations as true." Id. (quoting Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir.1998)). Courts may only grant a motion for judgment on the pleadings if "the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Id.

It is "inappropriate" for courts "to consider evidence outside of the pleadings for the purposes of a Rule 12(c) motion." Ross v. PennyMac Loan Servs. LLC, 761 F. App'x 491, 494 (6th Cir. 2019). If a court considers "matters outside the pleadings" when analyzing a Rule 12(c) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ.

P. 12(d). Courts may not convert Rule 12(c) motions into Rule 56 motions unless all parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." Id.

**III. ANALYSIS**

The FLSA permits current and former employees to sue for unpaid overtime wages and employer retaliation. Mr. Smith states both claims sufficiently to survive dismissal. Defendants' counterarguments misinterpret the MCA exemption and the pleading requirements for retaliation claims.

    A.    <u>The FLSA Creates Causes of Action for Unpaid Overtime Wages and Employer Retaliation.</u>

The FLSA creates two causes of action relevant to this case. First, the FLSA allows employees to recover unpaid overtime wages "at one and one-half times their regular rate for each hour above 40 worked in a workweek." <u>Sec'y of Lab. v. Timberline S., LLC</u>, 925 F.3d 838, 843 (6th Cir. 2019). However, only "certain employees" qualify for relief because several exemptions bar FLSA wage claims. <u>Id.</u> at 843, 850. In overtime wage litigation, the "employer bears the burden of proving that it qualifies for a claimed exemption," and courts "give FLSA exemptions a fair, rather than a narrow, reading." <u>Id.</u> at 850.

The FLSA also creates a cause of action for employer retaliation. Under the FLSA it is "unlawful" for an employer "to discharge or in any other manner discriminate against" an employee or a former employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215; <u>see also</u> <u>Adair v. Charter Cty. of Wayne</u>, 452 F.3d 482, 489 (6th Cir. 2006); <u>Green v. Sparta Veterinary Servs., LLC</u>, No. 2:16-00012, 2016 WL 10720466, at *3 (M.D. Tenn. Aug. 24, 2016) (noting that a "former employee" is protected by the FLSA's anti-retaliation provision).

4

"The burden-shifting analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), applies to a FLSA claim of retaliation." Adair, 452 F.3d at 489. Under the burden-shifting framework, the plaintiff must first make a "prima facie showing of retaliation." Id. "If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action." Id. If the defendant meets this burden, "the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext." Id.

B. Mr. Smith's Claim for Unpaid Overtime Wages Survives Dismissal.

Defendants ask the Court to dismiss Mr. Smith's FLSA overtime wages claim based on the MCA exemption. (Doc. No. 63 at 1). Under the MCA exemption, the FLSA does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." 29 U.S.C. § 213. To "fall within the Secretary's authority to regulate," an employee must "affect highway safety" and "be involved in 'interstate commerce' as defined by the MCA." Watson v. Advanced Distrib. Servs., LLC, 298 F.R.D. 558, 562 (M.D. Tenn. 2014); see also 29 C.F.R. § 782.2. Dismissal is improper here because the MCA exemption does not apply. Mr. Smith was not involved in interstate commerce while employed by Defendants, and Defendants' argument that Mr. Smith is nevertheless subject to the MCA exemption lacks merit.

*1. The MCA Exemption Does Not Bar Mr. Smith's Overtime Wages Claim Because the Pleadings Show He Did Not Operate in Interstate Commerce.*

Mr. Smith alleges he never operated in interstate commerce at ADEBCO. (Compl. ¶¶ 17–29). Drivers operate "in interstate commerce" where they "travel or transport . . . goods across state lines, or transport the goods in a 'practical continuity of movement' across State lines."

5

Timberline, 925 F.3d at 850.  A driver also operates in interstate commerce where "the driver has never transported goods in interstate commerce (under either of the first two methods) but has a reasonable expectation that he could be called to do so."  McClurg v. Dallas Jones Enters. Inc., No. 4:20-CV-00201-JHM, 2021 WL 2345354, at *3 (W.D. Ky. June 8, 2021); see also 29 C.F.R. § 782.2(b)(3) (employees "likely to be . . . called upon" to operate in interstate commerce fall under the MCA exemption).  Mr. Smith alleges that he (1) only drove routes within Tennessee for ADEBCO, (2) did not transport goods moving in interstate commerce, and (3) was unlikely to be called upon for interstate driving based on the responsibilities specific to his role.

Mr. Smith avers that he never drove across state lines for ADEBCO.  (Compl. ¶¶ 17, 20).  He says that "throughout his employment with Defendants" he drove between ADEBCO's lot, the I-440 worksite, and the Vulcan Danley Quarry, all of which are located in Tennessee.  (Id.).  He further alleges he "was never required to work outside of Tennessee" and "was never asked to operate a truck outside of Tennessee."  (Id. ¶¶ 28–29).  Defendants do not dispute these points.  (See Doc. No. 66 at 4, 5).  Hence, the routes Mr. Smith drove did not place him in interstate commerce under the MCA.  See Timberline, 925 F.3d at 851 (truck drivers did not operate in interstate commerce pursuant to the MCA where it was "undisputed [the] truck drivers did not cross state lines").

Mr. Smith also alleges he did not transport goods in a practical continuity of movement in interstate commerce.  (See Compl. ¶ 24).  Goods "being transported within the borders of one state are involved in a 'practical continuity of movement'" if they move "across state lines from the point of origin to the point of destination."  Ballou v. DET Distrib. Co., No. 3-03:1055, 2006 WL 2035729, at *11 (M.D. Tenn. July 17, 2006).  The Complaint says the "material transported by [Mr. Smith] from the I-440 construction site to the Quarry did not move out of state."  (Compl. ¶

6

24). Accepting this fact "as true," Roger Miller Music, 477 F.3d at 389, the Court finds Mr. Smith did not transport goods in a practical continuity of movement across state lines.[2]

Finally, according to the Complaint, Mr. Smith reasonably expected he would not be called upon for interstate driving. "[T]he 'reasonable expectation' test considers an employer's overall operations to determine whether a driver should expect to drive in interstate commerce." McClurg, 2021 WL 2345354, at *4 n.4. It also considers the specific role an employee was assigned. See Tang v. Wing Keung Enters., Inc., 210 F. Supp. 3d 376, 404 (E.D.N.Y. 2016). Here, Mr. Smith never drove interstate. (Compl. ¶¶ 28–29). And he was "not aware of any other coworker who worked with him at the I-440 construction site who was ever required or requested to drive a truck outside of Tennessee." (Id. ¶ 31). Viewing the Complaint in the light most favorable to Mr. Smith, it appears he was not "likely to be . . . called upon" to operate in interstate commerce. 29 C.F.R. § 782.2(b)(3); see also Tang, 210 F. Supp. 3d at 404 ("Because drivers and loaders were not randomly assigned routes, but were instead kept on the same route for certain periods of time, when they were assigned to intrastate routes, they were not 'likely to be called upon' to travel out-of-state.").

Defendants contend, without merit, that Mr. Smith was likely to be called upon for interstate driving based on an "Employee New Hire Orientation Form" they provided him during onboarding. (Doc. No. 63 at 8). The form states that ADEBCO "works on projects in multiple states," and employees "may be asked to work in any location where ADEBCO has work

---

[2] Defendants argue the goods Mr. Smith transported did in fact move across state lines, citing materials outside the pleadings. (E.g., Doc. No. 66 at 5). The Court simply cannot consider such materials at this stage of proceedings. Ross, 761 F. App'x at 494 ("No matter what evidence [a litigant] might have . . . it would be inappropriate for the district court . . . to consider evidence outside of the pleadings for the purposes of a Rule 12(c) motion.").

7

available." (Id.). As an initial matter, the new hire form constitutes material outside the pleadings, which the Court cannot consider. Ross, 761 F. App'x at 494; Odigie v. Nationstar Mortg., LLC, No. 3:18-CV-00675, 2020 WL 819517, at *5 (M.D. Tenn. Feb. 19, 2020). But even if the form was part of the pleadings, it would not require dismissal of Mr. Smith's claim. A generic form stating employees "may" be asked to work out-of-state does not prove Mr. Smith was "likely" to be called to do so. See 29 C.F.R. § 782.2(b)(3). Nor does it prove Mr. Smith should have expected to work out-of-state, especially where neither Mr. Smith nor other drivers on his route were ever actually asked to drive interstate for the entirety of Mr. Smith's employment. (Compl. ¶¶ 28–29, 31).

Viewing the Complaint in the light most favorable to Mr. Smith, Mr. Smith did not operate in interstate commerce, so dismissal of his wages claim under the MCA exemption is improper.

> 2. *Defendants' Argument that the MCA Exemption Applies Regardless of Whether Mr. Smith Operated in Interstate Commerce Lacks Merit.*

Defendants argue the MCA exemption bars Mr. Smith's wages claim even if he never operated in interstate commerce because his employer did operate in interstate commerce. (Doc. No. 63 at 5, 7). Defendants' interpretation of the MCA exemption is incorrect.

Defendants use a brief passage from Vaughn v. Watkins Motor Lines, Inc., 291 F.3d 900 (6th Cir. 2002) to support their interpretation of the MCA exemption.[3] (Doc. No. 63 at 5). The passage says the exemption applies to "an employee (1) who works for a private motor carrier that provides transportation in interstate commerce and (2) whose work activities affect the safety of that motor carrier." Vaughn, 291 F.3d at 904 (quoting Troutt v. Stavola Bros., Inc., 107 F.3d 1104,

---

[3] Defendants also rely heavily on Finn v. Dean Transp., Inc., 53 F. Supp. 3d 1043 (M.D. Tenn. 2014) to support their argument that the MCA exemption applies. (Doc. No. 63 at 4, 6, 7). But Finn is inapposite. There, the MCA exemption applied to an employee who drove intrastate routes because 10% of the goods he transported came from out-of-state. Finn, 53 F. Supp. 3d at 1057. Mr. Smith alleges the goods he transported never moved across state lines. (Compl. ¶ 24).

8

1106–07 (4th Cir. 1997)). Defendants argue the MCA exemption therefore applies to Mr. Smith, even if he never worked in interstate commerce, because (1) ADEBCO is a private motor carrier operating in interstate commerce, and (2) Mr. Smith's work affected ADEBCO's safety. (Doc. No. 63 at 5).

Defendants' argument fails under a full read of Vaughn. Vaughn considered whether certain employees of Watkins Motor Lines met the MCA's definition of "loaders," and were therefore subject to the MCA exemption. Vaughn, 291 F.3d at 904. After the passage upon which Defendants rely, the Vaughn court acknowledged that for loaders to qualify for exemption, their work activities had to affect "the safe operation of . . . vehicles on the highways *in interstate or foreign commerce*." Id. (emphasis added) (citation and quotation omitted). So, Vaughn does not support Defendants' argument that a particular employees' work need not touch interstate commerce for the employee to qualify for the MCA exemption.

Other Sixth Circuit decisions also undermine Defendants' interpretation of the MCA exemption. To qualify for the exemption, courts in the Sixth Circuit have consistently held an employee must personally "be involved in 'interstate commerce.'" Watson, 298 F.R.D. at 562; see also Timberline, 925 F.3d at 850 ("We have previously rejected an argument that the mere issuance of a certificate by the Interstate Commerce Commission (which regulated motor carriers prior to the DOT) was sufficient to bring employees within the MCA exemption when those employees drove only intrastate routes."); Baird v. Wagoner Transp. Co., 425 F.2d 407, 410 (6th Cir. 1970) ("[T]he MCA only covers employees actually 'part of a continuous movement in interstate commerce.'"); McClurg, 2021 WL 2345354, at *2 (citation omitted) (noting the MCA exemption applies to employees whose "work activities 'affect the safety of operation of motor vehicles' in interstate commerce").

9

Finally, the Code of Federal Regulations contradicts Defendants' interpretation of the MCA exemption. The regulations say the exemption "extends to those classes of employees and *those only* who . . . engage in activities . . . directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property *in interstate or foreign commerce*." 29 C.F.R. § 782.2 (emphasis added) (internal citations omitted).

The Court rejects Defendants' argument that the MCA exemption applies to employees operating outside interstate commerce.

### C. Mr. Smith's Retaliation Claim Survives Dismissal.

Defendants contend the Court should dismiss Mr. Smith's retaliation claim because the Complaint fails to plead a prima facie case of retaliation. (Doc. No. 63 at 14). "To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to [him or] her; and (4) there was a causal connection between the protected activity and the adverse employment action." Adair, 452 F.3d at 489. Contrary to Defendants' argument, Mr. Smith adequately pleads each of those elements.

Mr. Smith has clearly satisfied the first two requirements of a prima facie retaliation claim. He engaged in an "FLSA-protected activity" by "filing a cause of action seeking overtime pay." Id. And Defendants became aware of Mr. Smith's protected activity when Mr. Smith "serv[ed] them with the complaint." Id.

Mr. Smith has also satisfied the third requirement of a prima facie retaliation claim; he alleges Defendants took an adverse action against him. (Compl. ¶¶ 50–51). Adverse actions are "not confine[d]" to actions "that are related to employment or occur at the workplace." Burlington

N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).[4] Any action that "could well dissuade a reasonable worker" from engaging in protected activity constitutes an adverse action. Id. Because "the filing of a counterclaim" may dissuade protected activity, a counterclaim raised "with an ulterior motive" can satisfy the adverse action requirement. See Green, 2016 WL 10720466, at *3. Mr. Smith alleges Defendants took an adverse action against him by filing their counterclaim "with the intention of harassing, intimidating and/or dissuading [him] from pursuing his rights under the FLSA." (Compl. ¶ 51).

Defendants' argument that their counterclaim is not an adverse action falls short. Defendants contend a counterclaim does not qualify as an adverse action unless it is "baseless." (Doc. No. 63 at 10). However, accepting the Complaint's facts as true, Defendants' counterclaim *is* baseless. Mr. Smith alleges his truck accident occurred at the Vulcan Danley Quarry when, through no fault of his own, "the ground beneath his truck collapsed, causing his truck to tip over." (Compl. ¶¶ 32–33). That presents no apparent ground for suing Mr. Smith for negligence.[5]

Finally, Mr. Smith has satisfied the fourth requirement of a prima facie retaliation claim—causal connection. Courts may infer a causal connection between a protected activity and an adverse action based on their close "temporal proximity." Pettit v. Steppingstone, 429 F. App'x 524, 533–34 (6th Cir. 2011). The inference grows stronger where temporal proximity is

---

[4] Although Burlington was a Title VII case, it still applies here. See Green, 2016 WL 10720466, at *3.

[5] The grounds for a negligence action against Mr. Smith based on his truck accident appear particularly weak given that Mr. Smith "received worker's compensation benefits for his injuries" due to the accident. (Compl. ¶ 34). Depending on the facts that discovery uncovers, Defendants' counterclaim may raise questions under Rule 11. See Fed. R. Civ. P. 11 (permitting courts to impose sanctions for filings made for "any improper purpose").

11

"combined with other evidence of 'retaliatory conduct.'" Id. at 533. "One example of such sufficient, additional evidence is evidence of disparate treatment." Id.

The period of time between Mr. Smith's lawsuit and Defendants' countersuit somewhat supports causal connection in this case because it is "less than six months." See Parnell v. West, 114 F.3d 1188, 1188 (6th Cir. 1997). However, a "span of four months or more between protected activity and adverse action, without some additional compelling evidence of retaliation, is insufficient to establish the required causal connection." Martin v. Loomis Armored US, Inc., No. 3:08-0418, 2009 WL 1956685, at *10 (M.D. Tenn. July 7, 2009). Defendants filed their counterclaim four months after Mr. Smith instituted this lawsuit. (Doc. Nos. 1, 20). Hence, the temporal proximity between Mr. Smith's initial complaint and Defendants' counterclaim provides some evidence of causal connection, but it is not conclusive evidence of it.

Mr. Smith meets the causal connection requirement because he has alleged "disparate treatment" in addition to temporal proximity. Pettit, 429 F. App'x at 533. Disparate treatment occurs where an employee who did not engage in protected activity, but was otherwise similar to the plaintiff, was not subject to adverse action by the employer. See id. The Complaint alleges another ADEBCO driver negligently caused an accident severely damaging one of Defendants' trucks in 2019 and was not sued for negligence by Defendants. (Compl. ¶¶ 35–37). That, combined with temporal proximity, satisfies the causal connection requirement and raises an inference that Defendants' counterclaim was retaliatory.

Defendants argue their counterclaim was not retaliatory based on cases holding that "compulsory" counterclaims are less likely to involve retaliatory motive. (Doc. No. 63 at 11). Those cases are irrelevant because Defendants' counterclaim is not compulsory. To qualify as "compulsory," a counterclaim must "arise[] out of the transaction or occurrence that is the subject

12

matter of the opposing party's claim." Fed. R. Civ. P. 13.  Defendants assert their negligence action is compulsory because that action, and Mr. Smith's wage claim, both arise out of the parties' "employment relationship."  (Doc. No. 63 at 11).  But counterclaims are not compulsory merely because they arise out of the parties' employment relationship.  Wagoner v. N.Y.N.Y., Inc., No. 1:14-CV-480, 2015 WL 1468526, at *3 (S.D. Ohio Mar. 30, 2015) (holding "the counterclaims asserted by Defendants are properly characterized as permissive" where the counterclaims related to the "employment relationship" of the parties).  The Court rejects Defendants' argument that their counterclaim was compulsory and therefore was not retaliatory.

Because Mr. Smith has alleged all the elements of a prima facie retaliation claim, and Defendants' counterarguments are unavailing, the retaliation claim survives dismissal.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion for Judgment on the Pleadings.  (Doc. No. 63).  It will also deny as moot Defendants' Motion to Stay Discovery.  (Doc. No. 68).

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR
CHIEF UNITED STATES DISTRICT JUDGE