| | | |
|---|---|---|
| MARTREESE SMITH, individually and on behalf of all other similarly situated individuals, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | No. 2:20-cv-0003 |
| | ) | |
| v. | ) | |
| | ) | |
| ADBECO, INC., and DEBRA YOUNG, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Martreese Smith, individually and on behalf of all other similarly situated individuals, filed this suit against ADEBCO, Inc. and Debra Young ("Defendants"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA"). Before the Court is Defendants' motion for summary judgment (Doc. No. 115), which is ripe for review. (Doc. Nos. 116, 137, 142). For the following reasons, the motion for summary judgment will be granted.

## I. Background

Smith filed the Third Amended Complaint (Doc. No. 62) alleging failure to pay overtime and retaliation in violation of the FLSA. Smith seeks conditional collective action certification (Doc. No. 139), which Defendants oppose (Doc. No. 146). Defendants filed counterclaims against Smith for negligence and wage theft, (Doc. No. 20), but have since dismissed the negligence claim, (Doc. No. 87).

Defendants filed a motion to strike Smith's response to the motion for summary judgment, arguing, *inter alia*, that Smith's declaration, electronically signed, was not proper. (Doc. No. 140). Smith sought leave to file a corrected declaration, exhibit, and response to Defendants' statement

of undisputed material facts ("SUMF").  (Doc. Nos. 151, 151-1, 151-2, 151-3).  However, the "corrected" declaration was still unsigned.  (Doc. No. 151-1).  To be valid, a declaration under penalty of perjury must contain a "personal signature," not an electronic or typed signature.  See Blount v. Stanley Eng'g Fastening, 55 F.4th 504, 515 (6th Cir. 2022).  The Court cannot consider Smith's declaration.  However, the Court will otherwise consider Smith's corrected version of his responses to the SUMF.  (Doc. No. 151-2).  Accordingly, Smith's Motion for Leave to File Corrected Declaration and Correct Summary Judgment Record (Doc. No. 151) will be granted, and Defendants' Motion to Strike Plaintiff's Response to Defendants' Motion for Summary Judgment and Related Filings (Doc. No. 140) will be denied.

## II.     Undisputed Material Facts[1]

ADEBCO is an Interstate Motor Carrier that contracts with "prime contractors" to provide transportation services for federal interstate improvement projects.  (Doc. No. 151-2 ¶¶ 3, 9).  "Because ADEBCO is a fully licensed interstate motor carrier, prime contractors have the discretion to send ADEBCO's drivers and trucks anywhere they need them to go."  (Id. ¶ 18).  ADEBCO contracted with Kiewit Infrastructure South Company ("Kiewit") to provide trucks and drivers to work on a project on Interstate-440 ("I-440 project").  (Id. ¶¶ 14, 41).  ADEBCO billed Kiewit for the time that each ADEBCO truck performed work both at the I-440 site ("jobsite") and hauling materials to and from the jobsite.  (Id. ¶ 42).  ADEBCO drivers working on the I-440 project would pick up a truck at the ADEBCO lot and perform a pre-trip inspection before heading

---

[1] The facts in this section are drawn from the undisputed portions of the parties' statements of material facts (Doc. No. 151-2) and the exhibits submitted with the summary judgment briefing, except for Smith's declaration (as explained above).  The Court considers as admitted any facts that Defendants properly supported but that Smith did not properly deny under Rule 56(c)(1).

to the jobsite.  (Id. ¶¶ 46, 47).  If a driver had to haul materials from the jobsite to another location before returning to the ADEBCO lot at the end of their shift, the departure time from the other location was usually recorded on the driver's Time Ticket.  (Id. ¶ 73).  ADBECO trucks have GPS hardware that tracks when a truck's ignition is turned on and off and each truck's movement, arrival times, and departure times.  (Id. ¶ 76).

Some drivers who worked on the I-440 project were dispatched from other projects in other states, while some were dispatched by ADEBCO to other out-of-state projects.  (Id. ¶¶ 54, 55).  All of the material for the asphalt used in the I-440 project came from out of state sources and was transported to an asphalt plant in Nashville, where ADEBCO trucks loaded and transported it to be distributed at the jobsite.  (Id. ¶¶ 62, 63).

Smith was employed by ADEBCO as a truck driver on the I-440 project.  (Id. ¶ 51).  He signed ADEBCO's Employee New Hire Orientation checklist, which states that ADEBCO "works on projects in multiple states.  Employees may be asked to work in any location where [ADEBCO] has work available.  If an employee refuses to work at any location to which he/she is assigned this will be considered a voluntary resignation[.]"  (Doc. No. 143-1 at 17).   Smith also signed the pay policy, which stated that he would be paid "based on billable time to the customer" and he needed to submit daily Time Tickets showing his jobsite arrival and departure times.  (Doc. No. 151-2 ¶ 69).  Between July 15 and November 5, 2019, Smith was paid for 523 hours of work based on the times he reported on his Time Tickets, including 53 hours of overtime for weeks he reported working more than 40 hours.  (Id. ¶ 75).  He was paid for 15 hours and 44 minutes more than the total number of hours his truck was running.  (Id. ¶ 85).

On November 5, 2019, Smith's truck tipped on its side while he was attempting to dump a load of dirt and rock.  (Id. ¶ 94, 95).  Shortly before the accident, Smith had been talking to his

3

wife on his cell phone.  (Id. ¶ 104).  He did not exit his truck before backing up to see if the ground

was level.  (Id. ¶ 96). The date of the accident was his last day of productive work at ADEBCO.

(Id. ¶ 19).

### III.    Legal Standard

Summary judgment is appropriate only where there is "no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A

genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party.'"  Peffer v. Stephens, 880 F.3d 256, 262 (6th Cir. 2018) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "The party bringing the summary

judgment motion has the initial burden of informing the district court of the basis for its motion

and identifying portions of the record that demonstrate the absence of a genuine dispute over

material facts."  Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (internal citation omitted).

"The moving party may satisfy this burden by presenting affirmative evidence that negates an

element of the non-moving party's claim or by demonstrating an absence of evidence to support

the nonmoving party's case."  Id. (internal citation and quotation marks omitted).  "In response,

the nonmoving party must present 'significant probative evidence' that will reveal that there is

more than 'some metaphysical doubt as to the material facts.'"  Miller v. Maddox, 866 F.3d 386,

389 (6th Cir. 2017) (quoting Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993)).

In deciding a motion for summary judgment, the Court must review all the evidence, facts,

and inferences in the light most favorable to the party opposing the motion.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted).  The Court

does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth

of the matter.  See Anderson, 477 U.S. at 249, 255.  The mere existence of a scintilla of evidence

in support of the non-moving party's position is insufficient to survive summary judgment; rather,

4

there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595 (internal citation omitted).

**IV.    <u>Analysis</u>**

Defendants seek summary judgment because the Motor Carrier Act ("MCA") exemption to FLSA applies so Smith has no overtime claim; because he falsified his time records and was overpaid, and because he cannot show the elements of a retaliation claim. (Doc. No. 115 at 1–3). The Court will discuss each.

A. <u>MCA Exemption</u>

In § 213(b)(1) of the FLSA, Congress created an exemption from the FLSA's overtime requirement. <u>Sec'y of Lab. v. Timberline S., LLC</u>, 925 F.3d 838, 849 (6th Cir. 2019). The MCA states, in relevant part, that the Secretary of Transportation can prescribe requirements for employees of "a motor private carrier, when needed to promote safety of operation.'" <u>Id.</u> (quoting 49 U.S.C. § 31502(b)). A "motor private carrier" is defined as "a person who transports property or goods in interstate commerce." <u>Id.</u> (citing 49 U.S.C. § 13102(15)). A driver operates "in interstate commerce" if he "travel[s] or transport[s] . . . goods across state lines, or transport[s] the goods in a 'practical continuity of movement' across State lines." <u>Timberline</u>, 925 F.3d at 850 (quoting 29 C.F.R. 782.7(b)(1)). A driver also operates in interstate commerce where he "'has a reasonable expectation that he could be called to do so.'" <u>Smith v. ADEBCO, Inc.</u>, 566 F. Supp. 3d 826, 830 (M.D. Tenn. 2021) (first quoting <u>McClurg v. Dallas Jones Enters. Inc.</u>, No. 4:20-CV-00201-JHM, 2021 WL 2345354, at *3 (W.D. Ky. June 8, 2021); and then citing 29 C.F.R. § 782.2(b)(3) (employees "likely to be . . . called upon" to operate in interstate commerce fall under the MCA exemption)). An employer bears the burden of proving that it qualifies for the MCA exemption. <u>See</u> <u>Timberline</u>, 925 F.3d at 850.

Although Smith contends (and Defendants do not contest) that he never actually crossed state lines himself, (Doc. No. 116 at 18), Defendants argue that Smith operated in interstate commerce because he could reasonably be expected to cross state lines and transported goods in the "practical continuity of movement" across state lines. (Id.). The Court agrees that it is undisputed that Smith reasonably expected to work in interstate commerce. Smith indeed admits that when he was hired he was subject to working at any location to which he was assigned. (Doc. No. 151-2 ¶ 37). According to ADEBCO's president and owner, Debra Young, if Smith's employment had not been terminated, he would have been dispatched to an out-of-state job after the I-440 project was finished. (Id. ¶ 65). Young also explains that ADEBCO could have dispatched Smith across state lines at any time, just as it did other drivers on the I-440 project, and that during the I-440 project, ADEBCO drivers were shuffled as needed between up to seven projects in other states. (Id. ¶¶ 60, 66). Smith does not dispute that prime contractors, such as Kiewit, had the discretion to send him and other ADEBCO drivers anywhere. (Id. ¶ 18). According to Young, Kiewet sent ADEBCO drivers to Kentucky to pick up supplies and return them to Nashville for the I-440 project. (Doc. No. 143-1 ¶ 12). Smith has not come forward with admissible evidence refuting these facts. The MCA exemption applies, and summary judgment is required dismissing Smith's FLSA claim.

B. Smith's Overtime Claim

Even if the MCA exemption did not apply, Smith's FLSA claim would still fail. Defendants argue that Smith falsified his timecards and was overpaid as a result. (Doc. No. 116 at 14–15). Specifically, Smith was only entitled to be paid for the hours between his "ignition on" and "ignition off" times—not for any other time, e.g., even when he was required to attend a work

6

safety meeting.  (Id.).   The Court need not decide if that is correct, because Smith's claim fails for an independent reason.

"The FLSA requires an employer to pay its employees overtime wages at a rate of not less than one-and-a-half times the regular rate of pay for every hour that employees work over 40 hours per week." Viet v. Le, 951 F.3d 818, 822 (6th Cir. 2020) (first citing Keller v. Miri Microsystems, LLC, 781 F.3d 799, 806 (6th Cir. 2015); and then 29 U.S.C. § 207(a)(1)). "An employee who claims that he was not paid this overtime rate has the burden of proving that he performed work for which he was not properly compensated." Id. (citations and quotation marks omitted). "[C]ourts have considered the level of evidence that employees must present to create a jury question over whether they worked overtime." Id. at 823.  "Generally speaking, if an employee describes a specific work schedule exceeding 40 hours, courts have found the testimony sufficient. If, by contrast, the employee testifies generically that the employee worked overtime without providing details to support this claim, courts have found that the testimony falls short." Id.

Here, Smith has  failed to present evidence that creates a genuine dispute of material fact about Defendants' FLSA liability.  He admits that he was paid for 53 hours of overtime.  (Doc. No. 151-2 ¶ 75).  He does not offer any evidence of additional overtime hours he worked that he did not receive.  Because he bears the burden of production on work for which he was not compensated, his FLSA claim fails and summary judgment is required.

C. Retaliation

"The anti-retaliation provision of FLSA provides that an employer is prohibited from 'discharg[ing] or in any other manner discriminat[ing] against [an] employee because such employee has filed [a] complaint or instituted . . . any proceeding under [the FLSA].'" Adair v. Charter Cnty. of Wayne, 452 F.3d 482, 489 (6th Cir. 2006) (quoting 29 U.S.C. § 215(a)(3)).  "The

burden-shifting analysis in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 [] (1973), applies to a FLSA claim of retaliation." <u>Id.</u> (citation omitted).

"To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action." <u>Id.</u> (citation omitted). If the employee makes this showing, "the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action." <u>Id.</u> (citing <u>McDonnell Douglas</u>, 411 U.S. at 802). "'The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" <u>Pettit v. Steppingstone, Ctr. for the Potentially Gifted</u>, 429 F. App'x 524, 535 (6th Cir. 2011) (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254–255 (1981)). "If the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination." <u>Adair</u>, 452 F.3d at 489 (citation omitted). The employee can show pretext through evidence that "(1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate Defendants' action, or (3) the proffered reason was insufficient to motivate the action." <u>Id.</u> (citation omitted).

Because the MCA exemption applies, it is debatable whether Smith was protected by the FLSA's overtime provisions. Assuming, without deciding, whether Smith satisfies the prima facie elements of a retaliation claim, he offers no evidence that Defendants' explanations for bringing the counterclaims were pretextual. Defendants justify the counterclaims because Smith stole wages and had a poor job performance, "unlike other employee accidents that resulted in property

damages with mitigating factors." (Doc. No. 116 at 24). Defendants' claim of wage theft is questionable, based on the conflict between the declaration of ADEBCO's Vice President, Nelson Huckeby, and Smith's testimony. Compare (Doc. No. 99-1 ¶ 27) (Huckeby declaring, "Smith testified that he took a 30-minute lunch break every day"), with (Doc. No. 99-2 at 105:22–107:7) (Smith testifying that he stopped taking lunch breaks in September). Nevertheless, Defendants present proof of Smith's alleged "violation of safety rules result[ing] in the largest property and monetary loss in ADEBCO's history" to support their counterclaim. (Doc. No. 142 at 11). The safety rules included the policy against using his cell phone on a job site and not getting out of his truck to see that the ground was sloped before attempting to dump his truck, causing it to tip over. (Id. at 10). It is undisputed that Smith was on his phone shortly before the accident and he did not get out to look at the ground before attempting to dump his truck. (Doc. No. 151-2 ¶¶ 96, 104). Smith also points to other ADEBCO drivers who caused property damage but were not sued. (Doc. No. 151-2 ¶¶ 124–130). But Smith does not sufficiently address the differences between his comparator drivers' accidents and his accident, including that his allegedly caused the greatest property loss in ADEBCO's history. (See Doc. No. 137 at 6). Defendants' evidence supports their reasons for bringing the counterclaim. Smith has not met his burden to rebut it. As a result, his retaliation claim would not survive summary judgment.

## V. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 33) will be granted. Smith's Renewed Motion for Court-Approved Notice and Expedited Discovery (Doc. No. 139) will be denied as moot.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

9